IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

|  |  |
|---|---|
| FRANCIS S.K. OGATA, SR. | Criminal No. 12-00190-HG |
|  | Civil No. 15-00220-HG-BMK |
| Petitioner, |  |
| vs. |  |
| UNITED STATES OF AMERICA, |  |
| Respondent. |  |

**ORDER DENYING PETITIONER FRANCIS S.K. OGATA, SR.'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE, PURSUANT TO 28 U.S.C. § 2255 (ECF No. 125)**

On June 8, 2015, Petitioner Francis S.K. Ogata, Sr. filed a Motion to Vacate, Set Aside or Correct Sentence, pursuant to 28 U.S.C. § 2255. (ECF No. 125). Petitioner challenges his conviction and sentence. First, Petitioner Ogata argues his enhanced sentence violated the Due Process and Equal Protection clauses of the Fifth Amendment of the United States Constitution. Second, Petitioner claims his attorney provided ineffective assistance of counsel when he allegedly (1) failed to have evidence tested for Petitioner's DNA; (2) failed to call Amanda Ishikawa as a witness at Petitioner's trial; (3) failed to submit a Motion for a Judgment of Acquittal; and (4) failed to effectuate a plea agreement.

1

Petitioner's Motion to Vacate, Set Aside or Correct Sentence, pursuant to Title 28 U.S.C. § 2255 (ECF No. 125), is **DENIED**.

The Court finds that Petitioner is not entitled to an evidentiary hearing because his claims do not provide grounds for relief.

Petitioner is not entitled to a certificate of appealability because he has not made a substantial showing of the denial of a constitutional right.

## PROCEDURAL HISTORY

On January 11, 2013, after a jury trial, Petitioner Francis S.K. Ogata, Sr. ("Petitioner" or "Petitioner Ogata") was convicted of attempted possession with intent to distribute 50 grams or more of methamphetamine.  (ECF No. 102).

On July 1, 2013, the Court entered judgment against Petitioner Ogata.  (ECF No. 102).

On July 8, 2013, Petitioner filed a Notice of Appeal. (ECF No. 100).

On June 20, 2014, the Ninth Circuit Court of Appeals affirmed Petitioner's judgment.  The ruling included a finding that no enforceable plea agreement existed. (ECF No. 120).

On June 8, 2015, Petitioner timely filed a Motion to Vacate, Set Aside or Correct Sentence, pursuant to 28 U.S.C. § 2255 ("2255 Motion"), (ECF No. 125), and an accompanying Memorandum of

2

Law in Support of his 2255 Motion.  (ECF No. 126).

On July 1, 2015, the United States requested additional time to respond to Petitioner Ogata's 2255 Motion.  (ECF No. 130).

On July 2, 2015, the Court found that Petitioner waived his attorney-client privilege as to Attorney John Schum ("Attorney Schum").  (ECF No. 131).  The Court also granted the United States' request for additional time, and ordered that its Opposition to Petitioner's 2255 Motion be filed by August 31, 2015.  (ECF No. 132).

On August 31, 2015, the United States filed its Opposition to Petitioner's 2255 Motion and Attorney John Schum's Declaration of Counsel.  (ECF No. 133).

On September 29, 2015, Petitioner filed his Reply to the United States' Opposition.  (ECF No. 134).


## BACKGROUND

### The United States' Indictment of Petitioner

On February 16, 2012, the United States filed a one-count Indictment against Francis S.K. Ogata, Sr. ("Petitioner" or "Petitioner Ogata").  (ECF No. 10).  The Indictment charged Petitioner with attempt to possess with intent to distribute 50 grams or more of  methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  (Id.).

3

**Plea Discussions Between the United States and Petitioner**

On August 28, 2012, Petitioner's defense counsel, Attorney John Schum ("Attorney Schum") and the United States discussed the possibility of Petitioner entering a guilty plea.  No written plea offer or binding plea agreement resulted from the parties' discussions.  (Order Denying Def.'s Motion for Specific Performance of Plea Agreement at p. 2, ECF No. 101).

**The United States' filing of an Information**

On August 29, 2012, the United States filed a written Information, pursuant to 21 U.S.C. § 851.  (ECF No. 31).  The Information indicated that the United States intended to rely on Petitioner Ogata's prior drug-related felony conviction to support its claim that a conviction resulting from Petitioner's current case would warrant an enhanced sentence under 21 U.S.C. § 841(b)(1)(A).[1]  (Id.).

**Petitioner's Trial**

From January 7, 2013 to January 11, 2013, a jury trial was held on the charge of attempt to possess with intent to distribute 50 grams or more of  methamphetamine.  (ECF Nos. 65-

---

[1] In 2004, Petitioner pled guilty to, and was convicted of, conspiracy to distribute 5 grams or more of methamphetamine in violation of 21 U.S.C. § 841.  (ECF No. 41).

4

81).  The United States presented the testimony of 14 witnesses and introduced 31 exhibits.  (ECF Nos. 68; 70; 72; 82). Petitioner did not call any witnesses or introduce any exhibits. (Id.).

At Petitioner's trial, United States Postal Service Postal Inspector Ronald Corley ("Postal Inspector Corley") testified that in early 2012, a suspicious package mailed from Las Vegas, Nevada to Hilo, Hawaii was intercepted.  (Second Day of Trial Tr. at pp. 5-9, ECF No. 112).  A search warrant was requested, and a subsequent search of the package discovered 145.1 grams of methamphetamine.  (Id. at pp. 9-10).

After methamphetamine was found in the package, a warrant was obtained to place a tracking beeper inside the intercepted package.  (Second Day of Trial Tr. at pp. 12-14, ECF No. 112).  A tracking beeper notifies law enforcement when a particular package has been opened, and is used for controlled deliveries. (Id. at pp. 14-18).

In addition to the placing of the tracking beeper, Postal Inspector Corley also prepared a small marked bag containing methamphetamine retrieved from the intercepted package.  (Second Day of Trial Tr. at at pp. 18-20, ECF No. 112).  Postal Inspector Corley initialed and dated the small marked bag.  (Id.).  Once he positioned these items in the intercepted package, the intercepted package was resealed.  (Id. at p. 21).

5

A task force comprised of United States Postal Inspectors and Hawaii County Police Officers prepared to conduct a controlled delivery of the intercepted package at the Hilo post office. (See generally Second Day of Trial Tr., ECF No. 112). Hawaii County Police Officer Peter Fernandez obtained a search warrant for Petitioner's residence, his person, and all vehicles parked at his residence. (Id. at p. 104).

United States Postal Service Postal Inspector Sylvia Torres ("Postal Inspector Torres") testified that she saw Petitioner pick up the intercepted package from the post office. (Second Day of Trial Tr. at pp. 56-57, ECF No. 112). Hawaii County Police Officers James Correa and Greg Ikeda (collectively, "Officers Correa and Ikeda") also testified that they saw Petitioner leave the post office carrying the intercepted package. (Id. at pp. 141-142; 156-158).

After seeing Petitioner Ogata pick up the intercepted package, Postal Inspector Torres saw him enter a gray Jeep and drive away. (Second Day of Trial Tr. at pp. 56-64, ECF No. 112). He was the sole occupant of the Jeep. (Id.). Postal Inspector Torres relayed the Jeep's license plate number to law enforcement officers involved with the controlled delivery. (Id. at pp. 62-64). Unmarked cars containing officers set out to follow the Jeep.

Hawaii County Police Officer Robert Stewart testified that

6

the law enforcement officers charged with following the sound of the beeper heard it indicate that the intercepted package had been opened. (Second Day of Trial Tr. at p. 100, ECF No. 112). The beeper was later found in a damaged condition in an open green area near a school.

The car containing Officers Correa and Ikeda spotted Petitioner Ogata driving the Jeep toward his residence.  (Second Day of Trial Tr. at pp. 149-151; 162-163, ECF No. 112).  Upon arrival at Petitioner's residence, law enforcement officers saw the Jeep parked near the residence.  (Id. at pp. 103-107).  In executing the search warrant, the officers discovered the small marked bag of methamphetamine in the Jeep.  (Id.).  They also found a wallet holding Petitioner's driver's license, (id. at pp. 188-191), and a rental agreement by Petitioner for the Jeep. (Id. at pp. 193-194).

The law enforcement officers arrested Petitioner at his residence.  (Second Day of Trial Tr. at p. 187, ECF No. 112).  In addition to Petitioner Ogata, his girlfriend Amanda Ishikawa ("Ishikawa"), was also arrested on a separate state charge. (Second Day of Trial Tr. at pp. 184-187, ECF No. 112).  After her arrest, Ishikawa provided a statement to law enforcement officials.  (Fourth Day of Trial Tr. at pp. 18-19, ECF No. 114).

7

**The Jury's Verdict**

On January 11, 2013, the trial concluded.  (ECF No. 79).  On the same date, the jury returned a verdict of guilty.  (ECF Nos. 79; 80).

**Petitioner's Sentencing Hearing**

On July 1, 2013, the Court sentenced Petitioner Ogata to 240 months, or 20 years, imprisonment, 10 years supervised release, and levied a special assessment of 100 dollars.  (ECF No. 102).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2255, provides federal prisoners with a right of action to challenge a sentence if it was imposed in violation of the Constitution or laws of the United States, the court was without jurisdiction to impose such a sentence, the sentence was in excess of the maximum authorized by law, or the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255(a).  A prisoner may file a motion ("2255 Motion") to vacate, set aside, or correct a sentence.  28 U.S.C. § 2255. The scope of collateral attack of a sentence is limited, and does not encompass all claimed errors in conviction and sentencing.

Courts do not hold *pro se* petitioner submissions to the same standard as filings submitted by counsel.  Corjasso v. Ayers, 278

8

F.3d 874, 878 (9th Cir. 2002), as amended on denial of reh'g
(Feb. 8, 2002).  *Pro se* submissions are liberally construed "to
afford the petitioner the benefit of any doubt."  <u>Hebbe v.
Pliler</u>, 627 F.3d 338, 342 (9th Cir. 2010) (quoting <u>Bretz v.
Kelman</u>, 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985)) (internal
quotations omitted).

**ANALYSIS**

Petitioner Francis S.K. Ogata, Sr.'s ("Petitioner" or
"Petitioner Ogata") Motion to Vacate, Set Aside or Correct
Sentence, pursuant to 28 U.S.C. § 2255 ("2255 Motion") challenges
his conviction and sentence.  (ECF No. 125).  First, Petitioner
Ogata argues his enhanced sentence violated the Due Process and
Equal Protection clauses of the Fifth Amendment of the United
States Constitution.  Second, Petitioner claims his attorney
provided ineffective assistance of counsel when he allegedly (1)
failed to have evidence tested for Petitioner's DNA under the
Innocence Protection Act; (2) failed to call Amanda Ishikawa at
Petitioner's trial; (3) failed to submit a Motion for a Judgment
of Acquittal; and (4) failed to effectuate a plea agreement.

## I.  Petitioner's Enhanced Sentence was Constitutional

Petitioner's 2255 Motion alleges that his enhanced sentence
violated his Fifth Amendment Due Process and Equal Protection

Rights.  (2255 Motion at p. 7, ECF No. 125; Memo. of Law in
Support at pp. 4-5, ECF No. 126).  Petitioner Ogata concedes that
previous court rulings have upheld the constitutionality of
sentence enhancements.  (Memo. of Law in Support at p. 6) (citing
to United States v. Davis, 36 F.3d 1424 (1994)).  Petitioner
argues, however, that there is no longer any rational basis for
his enhanced sentence because the United States Department of
Justice ("DOJ") allegedly announced it would no longer seek
sentence enhancements.  (2255 Motion at p. 7; Memo. of Law in
Support at pp. 4-5).

### A.  Recidivist Sentence Enhancements

A criminal defendant who has a prior conviction for a felony
drug offense faces a 20-year mandatory minimum sentence if he is
found guilty of violating 21 U.S.C. § 841 (a).  21 U.S.C. §
841(b)(1)(A)(viii).  This enhanced sentence can only be imposed
if the United States files a written Information that details the
prior conviction to be relied upon.  21 U.S.C. § 851(a)(1).  Once
the United States files the Information, the sentencing court is
required to impose the enhanced sentence "[i]f the [defendant]
files no response to the information, or if the court determines,
after hearing, that the person is subject to increased punishment
by reason of prior convictions."  21 U.S.C. § 851(d)(1).

**B.   The Attorney General's August 12, 2013 Memorandum Does Not Render Petitioner's Enhanced Sentence Unconstitutional**

In support of his claim that his enhanced sentence violates the Due Process and Equal Protection clauses of the Fifth Amendment, Petitioner Ogata refers to a 2013 DOJ announcement that he alleges ended the DOJ's practice of seeking enhanced sentences.  (2255 Motion at p. 7, ECF No. 125; Memo. of Law in Support at pp. 4-5, ECF No. 126).

Petitioner does not accurately characterize the memorandum released on August 12, 2013, by the United States Attorney General, entitled "Department Policy on Charging Mandatory Minimum Sentences and Recidivist Enhancements in Certain Drug Cases" (the "Attorney General's Memorandum").  The Attorney General's Memorandum clarified the circumstances in which federal prosecutors should pursue enhanced sentences.  The Attorney General's Memorandum did not, however, state or imply that the United States would no longer seek enhanced sentences.  Even if the Attorney General's Memorandum had ordered federal prosecutors to cease seeking enhanced sentences, an agency directive does not bestow added constitutional protections.  United States v. Caceres, 440 U.S. 741, 749-751 (1979).  The Attorney General's Memorandum does not affect the constitutionality of Petitioner Ogata's enhanced sentence.

11

### 1. Petitioner's Enhanced Sentence Does Not Violate Due Process

The Ninth Circuit Court of Appeals has consistently held that enhanced sentences comport with the Due Process Clause of the Fifth Amendment.  <u>United States v. Jensen</u>, 425 F.3d 698, 708 (9th Cir. 2005), *cert. denied*, 547 U.S. 1056 (2006) (citing <u>United States v. Van Winrow</u>, 951 F.2d 1069 (9th Cir. 1991)).  A sentence enhancement for a prior non-violent drug conviction has a rational basis because "Congress can choose to treat drug crimes as seriously as violent crimes."  <u>United States v. Doney</u>, 190 F. App'x 532, 534 (9th Cir. 2006).  Petitioner Ogata's claim that his enhanced sentence violated the Due Process Clause of the Fifth Amendment is without merit.

### 2. Petitioner's Enhanced Sentence Does Not Violate Equal Protection

An enhanced sentence pursuant to 21 U.S.C. § 841(b) does not violate the Equal Protection Clause of the Fifth Amendment because it is "based on a broad and legitimate basis."  <u>United States v. Harding</u>, 971 F.2d 410, 413 (9th Cir. 1992).  Congress has a valid interest in deterring and segregating repeat offenders.  <u>See</u> <u>Ewing v. California</u>, 538 U.S. 11, 25 (2003).  Petitioner Ogata's claim that his enhanced sentence violated the Equal Protection Clause of the Fifth Amendment is without merit.

## II.   Petitioner's Ineffective Assistance of Counsel Claims

Petitioner Ogata's 2255 Motion claims his attorney, John Schum ("Attorney Schum"), provided ineffective assistance of counsel when he allegedly (1) failed to have evidence tested for Petitioner's DNA under the Innocence Protection Act; (2) failed to call Amanda Ishikawa at Petitioner's trial; (3) failed to submit a Motion for a Judgment of Acquittal; and (4) failed to effectuate a plea agreement.

A defendant who alleges ineffective assistance of counsel must satisfy the Strickland two-part test of ineffective assistance:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).

### A.   Failure to Test Petitioner's DNA Pursuant to the Innocence Protection Act

Petitioner Ogata claims Attorney Schum was unconstitutionally ineffective for failing to have his DNA tested pursuant to the Innocence Protection Act (the "Innocence Protection Act" or the "Act"), 18 U.S.C. § 3600. (2255 Motion at

13

p. 4, ECF No. 125; Memo. of Law in Support at pp. 1-2, ECF No. 126). Petitioner alleges that had his DNA been tested, the result would have convinced the jury that he never handled the intercepted package that contained the planted beeper device and the small marked bag of methamphetamine. (Memo. of Law in Support at pp. 1-2).

Attorney Schum disputes Petitioner's claim and states that any DNA test would have likely been fruitless in light of (1) Petitioner's private admission that he picked up the intercepted package; (2) the overwhelming evidence that indicated Petitioner picked up the package; and (3) the significant risk that DNA testing would incriminate, rather than exonerate, Petitioner. (Atty. Schum Decl. at ¶¶ 11-12, ECF No. 133-5).

### 1. The Innocence Protection Act Does Not Apply to Pre-Conviction Defendants

The Innocence Protection Act allows, under limited circumstances, federal prisoners to challenge their convictions through DNA testing. 18 U.S.C. § 3600(a). Congress intended the Act to exonerate wrongfully convicted individuals whose DNA was left at crime scenes. United States v. Watson, 792 F.3d 1174, 1177 (9th Cir. 2015) (discussing the Act in detail). The plain words of the Act restrict its application to *post-conviction* motions before a district court. 18 U.S.C. § 3600(a). The Innocence Protection Act does not provide any legal standing to

criminal defendants who have not been convicted.  Attorney Schum
had no obligation under the Act to request a test of Petitioner
Ogata's DNA prior to and during his trial.

### 2.  Petitioner Does Not Qualify Under the Innocence Protection Act.

Even if the Court assumes, without finding, that Petitioner
Ogata is claiming Attorney Schum should have had Petitioner's DNA
tested post-conviction, Petitioner does not satisfy the Act's
threshold requirements.  18 U.S.C. § 3600(a).  One key
prerequisite of the Act is that a court must find that new DNA
results "raise a reasonable probability that the applicant did
not commit the offense."  18 U.S.C. § 3600(a)(8)(B).  No such
reasonable probability can be found in Petitioner's case,
however, as the evidence presented at trial unequivocally pointed
to him as the individual who received the intercepted package.
United States v. Jordan, 594 F.3d 1265, 1268 (10th Cir. 2010).

At Petitioner's trial, the testimony of multiple witnesses
established that he picked up the intercepted package.  (See
generally Second Day of Trial Tr., ECF No. 112).  Hawaii County
Police Officers James Correa and Greg Ikeda (collectively,
"Officers Correa and Ikeda") testified that they saw Petitioner
leave the Hilo post office carrying the intercepted package.
(Id. at pp. 141-142; 156-158).  United States Postal Service
Postal Inspector Sylvia Torres ("Postal Inspector Torres") also

15

saw Petitioner pick up the intercepted package from the post office, enter a gray Jeep, and drive away.  (<u>Id.</u> at pp. 56-64). Petitioner was the sole occupant of the Jeep.  (<u>Id.</u>).  Postal Inspector Torres relayed the Jeep's license plate number to the law enforcement officers involved with the controlled delivery. (<u>Id.</u> at pp. 62-64).

The car containing Officers Correa and Ikeda spotted Petitioner driving the Jeep toward his residence.  (Second Day of Trial Tr. at at pp. 149-151; 162-163, ECF No. 112).

Once law enforcement officers arrived at Petitioner's residence, they searched the Jeep and found the small marked bag of methamphetamine that had been placed in the intercepted package. (Second Day of Trial Tr. at pp. 103-107, ECF No. 112). They also found a wallet holding Petitioner's driver's license, (<u>id.</u> at pp. 188-191), and a rental agreement by Petitioner for the Jeep.  (<u>Id.</u> at pp. 193-194).

The cumulative weight of the evidence presented at trial forecloses Petitioner's argument that any DNA test would "raise a reasonable probability" that he did not handle the intercepted package.  18 U.S.C. § 3600(a)(8)(B).  Petitioner argues that a DNA test result would show a lack of DNA on the intercepted package and its contents.  (Memo. of Law in Support at pp. 1-2, ECF No. 126).  This scenario, however, does not negate the fact that multiple individuals saw him receive the intercepted package

16

and the car he had been driving contained the small marked bag of methamphetamine that had been placed in the intercepted package. Jordan, 594 F.3d at 1268.  Attorney Schum's strategic decision not to seek a DNA test was reasonable.  Strickland, 466 U.S. at 690-691.  Even if a test had shown Petitioner's DNA was not present on the small marked bag, no prejudice resulted under Strickland because the mere lack of DNA does not demonstrate a lack of possession.  See United States v. Fierro, No. 2:09-CR-00240-RLH, 2013 WL 551420, at *2 (D. Nev. Feb. 12, 2013). Attorney Schum was not unconstitutionally ineffective when he did not seek a DNA test for Petitioner under the Innocence Protection Act.

### B.  Failure to Call Amanda Ishikawa at Petitioner's Trial

Petitioner Ogata's 2255 Motion alleges that Attorney Schum was unconstitutionally ineffective when he failed to call Petitioner's girlfriend, Amanda Ishikawa ("Ishikawa"), as a witness at his trial.  (2255 Motion at p. 5, ECF No. 125; Memo. of Law in Support at pp. 2-5, ECF No. 126).

### 1.  Ishikawa's Evolving Narrative

On February 3, 2012, the same date as Petitioner's arrest, Ishikawa made a statement that incriminated Petitioner.  (January 10, 2013, Fourth Day of Trial Tr. at pp. 18-19, ECF No. 114). Ishikawa's statement indicated that Petitioner Ogata was

expecting to receive a methamphetamine package that day.  (Atty. Schum Decl. at ¶ 14, ECF No. 133-5).  In a video taped interview with law enforcement, she outlined details of a series of actions by Petitioner dealing with methamphetamine packages.  (Id. at ¶¶ 13-14).

In May 2012, Attorney Schum spoke with Ishikawa's attorney about Petitioner's case.  (Atty. Schum Decl. at ¶¶ 7; 13, ECF No. 133-5).  Ishikawa's attorney informed Attorney Schum that Ishikawa would testify that her initial statement, which incriminated Petitioner, was false.  (Id. at ¶ 13).  Attorney Schum states that Ishikawa planned to discredit her initial statement by either claiming she was intoxicated on drugs at the time or that she lied to protect herself.  (Id.).

On November 9, 2012, Attorney Schum met with Ishikawa. (Atty. Schum Decl. at ¶ 14, ECF No. 133-5).  During the meeting, Ishikawa offered to testify to whatever Attorney Schum wished for her to say in aid of Petitioner's defense.  (Id.).  Attorney Schum responded that she must testify truthfully, and advised her to consult her attorney.  (Id.).

After their November 9 meeting, Attorney Schum met with Ishikawa on four additional occasions in November and December 2012.  (Atty. Schum Decl. at ¶ 15, ECF No. 133-5).  During these meetings, Ishikawa stated she intended to claim responsibility for picking up the intercepted package.  (Id.).  Ishikawa also

18

indicated she would demand immunity before testifying in court. (Id.).

On January 10, 2013, the fourth day of trial, Ishikawa received a grant of immunity from the United States. (ECF No. 75; Fourth Day of Trial Tr. at pp. 17-19, ECF No. 114). Ishikawa retracted her initial statement and informed both parties and the Court that she planned to testify that she picked up the intercepted package from the post office. (Fourth Day of Trial Tr. at pp. 18-19; 42-43; Atty. Schum Decl. at ¶¶ 11-16, ECF No. 133-5).

The United States decided against calling Ishikawa as a witness at the trial. (Fifth Day of Trial Tr. at p. 3, ECF No. 115). Attorney Schum investigated the viability of Ishikawa's new narrative, but ultimately declined to call her after concluding her testimony would be false and a strategic liability. (Fourth Day of Trial Tr. at p. 30, ECF No. 114; Atty. Schum Decl. at ¶¶ 11-16, ECF No. 133-5).

### 2. Attorney Schum's Decision Not to Call Amanda Ishikawa as a Witness

Petitioner argues that Attorney Schum should have called Ishikawa as a witness because she would have testified that she, and not Petitioner, picked up the intercepted package. (Memo. of Law in Support at pp. 2-5, ECF No. 126). Petitioner claims that Ishikawa's testimony would have provided the jury with reasonable

19

doubt.  (<u>Id.</u>).

In response, Attorney Schum states that Ishikawa planned to present false testimony to protect Petitioner.  (Atty. Schum Decl. at ¶¶ 13-15, ECF No. 133-5).  Attorney Schum decided not to call Ishikawa as a witness after (1) analyzing her proposed testimony, which he believed to be false; (2) reviewing her prior statement, which incriminated Petitioner; (3) discussing Petitioner's case with her, during which she stated her intention to say whatever Attorney Schum wished for her to say in court; (4) determining that the jury would see her as biased, given the fact that she is Petitioner's girlfriend; and (5) considering the risk that her testimony would damage Petitioner's case.  (<u>Id.</u> at ¶¶ 11-16).  Attorney Schum asserts that during trial, Petitioner agreed not to call Ishikawa as a witness after weighing the benefits and risks of her proposed testimony.  (<u>Id.</u> at ¶ 16).

An attorney's decision to call or not to call an individual as a witness is a strategic decision.  <u>Raley v. Ylst</u>, 470 F.3d 792, 801 (9th Cir. 2006).  Strategic decisions made after a thorough investigation are generally unchallengeable. <u>Strickland</u>, 466 U.S. at 690.  Strategic decisions made after a less-than-thorough investigation are upheld if they are reasonable.  <u>Id.</u> at 690-691.  Mere criticism over an attorney's strategy cannot support an ineffective assistance of counsel claim.  <u>Raley</u>, 470 F.3d at 799; <u>Gustave v. United States</u>, 627

F.2d 901, 904 (9th Cir. 1980).

It is reasonable for an attorney to decide against calling a particular witness if the witness' testimony would be fruitless or even detrimental to the defense. Harrington v. Richter, 562 U.S. 86, 108 (2011); Bell v. Cone, 535 U.S. 685, 700-701 (2002); Denham v. Deeds, 954 F.2d 1501, 1505 (9th Cir. 1992). Morever, an attorney is under no obligation to present testimony that he reasonably believes to be false. Lord v. Wood, 184 F.3d 1083, 1095 n. 9 (9th Cir. 1999).

Attorney Schum's strategic decision not to call Ishikawa as a witness was reasonable. Strickland, 466 U.S. at 690-691. Ishikawa's conduct substantiated Attorney Schum's decision against calling her as a witness. Immediately before and during most of Petitioner's trial, Ishikawa's proposed testimony remained unsettled and potentially perjurious. (Atty. Schum Decl. at ¶¶ 11-16, ECF No. 133-5; Fourth Day of Trial Tr. at pp. 18-20 ECF No. 114). A decision to call her to the stand would have been a risky tactic for the defense. If Ishikawa testified in accordance with her prior statement, she would have incriminated Petitioner. If Ishikawa instead claimed that she, and not Petitioner, picked up the intercepted package, her account would have been against the weight of the trial evidence. See Wilson v. Henry, 185 F.3d 986, 989 (9th Cir. 1999) (holding that an attorney did not have an obligation to put forth

21

testimony that dramatically varied with trial evidence).  Given
the profound risk associated with placing Ishikawa on the stand,
Attorney Schum's decision "reflects the skill and judgment one
would expect of a reasonably competent attorney." Denham, 954
F.2d at 1505.  Petitioner Ogata's claim that Attorney Schum was
unconstitutionally ineffective for failing to call Ishikawa as a
witness is without merit.

### C.  Failure to Submit a Motion for a Judgment of Acquittal

Petitioner Ogata's 2255 Motion alleges that Attorney Schum
was unconstitutionally ineffective when he failed to submit a
Motion for a Judgment of Acquittal.  (2255 Motion at p. 8, ECF
No. 125; Memo. of Law in Support at pp. 6-7, ECF No. 126).
Petitioner claims that Attorney Schum should have moved the Court
for a Judgment of Acquittal because the United States did not
bear its burden of proof at trial.  (Id.).

In response, Attorney Schum states that he decided against
submitting a Motion for a Judgment of Acquittal because he
concluded that the strength of the United States' evidence was
more than sufficient to present the case to the jury.  (Atty.
Schum Decl. at ¶ 17, ECF No. 133-5).

A Motion for a Judgment of Acquittal is a procedural
mechanism that allows the trial court to determine whether
sufficient evidence exists to sustain a conviction.  Fed. R.
Crim. P. 29(a).  If the trial court finds that "no rational trier

of fact could have found the defendant guilty beyond a reasonable doubt," it must grant the defendant's Motion for a Judgment of Acquittal. <u>United States v. Jackson</u>, 335 F.3d 170, 180 (2d Cir. 2003). A Motion for a Judgment of Acquittal, therefore, is unnecessary where the jury could find that the prosecution met all the elements of the charged offense. <u>United States v. Moore</u>, 921 F.2d 207, 210 (9th Cir. 1990); <u>see</u> <u>also</u> <u>Riley v. Berquis</u>, 481 F.3d 315, 321 (6th Cir. 2007). An attorney is not obligated to file a Motion for a Judgment of Acquittal when such a motion would be meritless. <u>Moore</u>, 921 F.2d at 210.

At his trial, Petitioner faced considerable evidence that proved he held the requisite knowledge and intent to be convicted under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. The testimony of multiple witnesses established that he picked up the intercepted package, had possession of the small marked bag of actual methamphetamine, and drove to his residence with it.

During Petitioner's trial, Officers Correa and Ikeda testified that they saw Petitioner leave the post office carrying the intercepted package. (Second Day of Trial Tr. at pp. 141-142; 156-158, ECF No. 112). Postal Inspector Torres also saw Petitioner pick up the intercepted package from the post office, enter a gray Jeep, and drive away. (<u>Id.</u> at pp. 56-64). Petitioner was the sole occupant of the Jeep. (<u>Id.</u>). Postal Inspector Torres relayed the Jeep's license plate number to the

law enforcement officers involved with the controlled delivery. (Id. at pp. 62-64).

The car containing Officers Correa and Ikeda spotted Petitioner driving the Jeep toward his residence. (Second Day of Trial Tr. at at pp. 149-151; 162-163, ECF No. 112).

Once law enforcement officers arrived at Petitioner's residence, they searched the Jeep and found the small marked bag of methamphetamine that had been placed in the intercepted package. (Second Day of Trial Tr. at pp. 103-107, ECF No. 112). They also found a wallet holding Petitioner's driver's license, (id. at pp. 188-191), and a rental agreement by Petitioner for the Jeep. (Id. at pp. 193-194).

A jury could, and did, find that the United States met all the elements of the charged offense. Moore, 921 F.2d at 210. Attorney Schum was under no obligation to present a futile motion before the Court. Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996). Even if Attorney Schum should have filed a Motion for a Judgment of Acquittal, no prejudice resulted, as the evidence presented was sufficient for a rational trier of fact to find Petitioner guilty beyond a reasonable doubt. Jackson, 335 F.3d at 180. Petitioner Ogata's claim that Attorney Schum was unconstitutionally ineffective for failing to submit a Motion for a Judgment of Acquittal is without merit.

**D.  Failure to Effectuate a Plea Agreement**

Petitioner Ogata alleges that Attorney Schum was unconstitutionally ineffective when he failed to conclude a plea agreement with the United States.  (Memo. of Law in Support at pp. 8-10, ECF No. 126).  Petitioner states that the government and Attorney Schum were in the process of negotiating a favorable plea bargain on August 28, 2012.  Petitioner states the United States filed a written Information, pursuant to 21 U.S.C. § 851, with the Court before formalizing an agreement.  (Id.).

At no point between August 28, 2012 and the January 7, 2013 trial did Petitioner indicate to the Court that a plea agreement existed.  After trial, sentencing was scheduled for April 25, 2013.  In Petitioner's sentencing statement filed on March 29, 2013, Petitioner for the first time claimed that the August 28, 2012 discussion between the attorneys resulted in an enforceable plea agreement.  (ECF Nos. 87; 89).  The Court required Petitioner to file a memorandum containing the legal basis for his claim of a plea agreement and continued the sentencing date.  Petitioner's Motion for Specific Performance of Plea Agreement was filed on May 22, 2013.  (ECF No. 94).  The government filed it's opposition on June 4, 2013.  (ECF No. 96).  A hearing was held, at which the parties spoke to the Motion on July 1, 2013.  The Motion was denied and sentence was entered.  (ECF No. 117).  On July 15, 2013, the Court entered a written order outlining the

25

reasons for denying Petitioner's Motion.  (ECF No. 101).  On June

20, 2014 the Ninth Circuit Court of Appeals affirmed this Court's

July 15, 2013 order.  (ECF No. 120); United States v. Ogata, 580

F. App'x 546 (9th Cir. 2014).

Petitioner's argument that an enforceable plea agreement

existed between himself and the United States is foreclosed by

United States v. Ogata, 580 F. App'x 546 (9th Cir. 2014), and

this Court's July 15, 2013 order.  (ECF No. 101).  On July 15,

2013, this Court found that no written offer of a plea agreement

existed, and there had been no detrimental reliance on any plea

offer.  (Order Denying Def.'s Motion for Specific Performance of

Plea Agreement at p. 8, ECF No. 101).  The Ninth Circuit Court of

Appeals affirmed this Court's July 15, 2013 order, and held that

since this Court did not approve any plea agreement, any

agreement that may have existed could not be enforced.  Ogata,

580 F. App'x at 546-547.

There is no constitutional right to a plea agreement.  Nunes

v. Mueller, 350 F.3d 1045, 1052 (9th Cir. 2003).  The

Constitution does entitle defendants to the right to receive

effective assistance of counsel once they are engaged in the plea

bargaining process.  Id.  During the plea bargaining process,

defense counsel is afforded discretion as to how plea

negotiations are conducted.  Aquilar v. Alexander, 125 F.3d 815,

820-821 (9th Cir. 1997).  Defense counsel cannot be

unconstitutionally ineffective for failing to obtain a plea agreement if the United States never offered one. <u>Eisemann v. Herbert</u>, 401 F.3d 102, 109 (2d Cir. 2005) (citing <u>Burger v. Kemp</u>, 483 U.S. 776, 785-86 (1987)).

Throughout the course of Petitioner's case, the United States has consistently maintained that it never offered a plea agreement to Petitioner. (ECF No. 96; Memo. in Opp. at pp. 33-34, ECF No. 133). On August 28, 2012, Attorney Schum and the United States discussed the possibility of Petitioner entering a guilty plea. (Order Denying Def.'s Motion for Specific Performance of Plea Agreement at p. 2, ECF No. 101). No written plea offer or binding plea agreement resulted from the parties' discussions. (<u>Id.</u> at p. 8).

Attorney Schum was not deficient for failing to conclude a plea agreement where no offer existed. <u>Eisemann</u>, 401 F.3d at 109. Attorney Schum was not constitutionally required to withdraw and testify because no amount of testimony would change the legal principle that judicial approval is a prerequisite of an enforceable plea agreement. <u>See</u> <u>Rupe</u>, 93 F.3d at 1445. Even if Attorney Schum should have withdrawn from representation and testified as to his version of the plea discussions, Petitioner suffered no prejudice as there was no plea agreement to enforce and Petitioner did not detrimentally rely on the plea negotiations. (Order Denying Def.'s Motion for Specific

Performance of Plea Agreement at p. 8, ECF No. 101).   Petitioner

Ogata's claim that Attorney Schum was unconstitutionally

ineffective for failing to effectuate a plea agreement is without

merit.


**III.   Petitioner is Not Entitled to an Evidentiary Hearing**

An evidentiary hearing in a Section 2255 action is required

"[u]nless the motion and the files and records of the case

conclusively show that the prisoner is entitled to no relief."

28 U.S.C. § 2255(b).   The underlying standard for an evidentiary

hearing asks whether the prisoner "has made specific factual

allegations that, if true, state a claim on which relief could be

granted."   United States v. Schaflander, 743 F.2d 714, 717 (9th

Cir. 1984).

An evidentiary hearing is not required if a prisoner's

allegations, "when viewed against the record, do not state a

claim for relief or are so palpably incredible or patently

frivolous as to warrant summary dismissal."   United States v.

Leonti, 326 F.3d 1111, 1116 (9th Cir. 2003).   Mere conclusory

statements do not warrant an evidentiary hearing.   Schaflander,

743 F.2d at 721.   To the extent that a prisoner's allegations are

contradicted by the record, the Court need not accept them as

true.   United States v. Quan, 789 F.2d 711, 715 (9th Cir. 1986).

28

No evidentiary hearing is required in this case. Petitioner's allegations are contrary to the record and therefore are not accepted as true. <u>Quan</u>, 789 F.2d at 715. Petitioner fails to state a claim for relief because his allegations conflict with governing law, the record, the transcripts, the evidence presented at trial, the declaration of his counsel, and the parties' filings. Petitioner is not entitled to an evidentiary hearing.

## IV. Petitioner is Not Entitled to a Certificate of Appealability

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that a Certificate of Appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right", 28 U.S.C. § 2253(c)(2). A "substantial" showing requires a prisoner to show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84 (2000)(quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893, n. 4 (1983)).

Petitioner's 2255 Motion has not made a substantial showing that he was deprived of a constitutional right. Petitioner's arguments are not supported by the record and applicable law.

Reasonable jurists would not debate the Court's conclusion, and there is no reason to encourage further proceedings.

Petitioner is not entitled to a Certificate of Appealability.

**CONCLUSION**

Petitioner Francis S.K. Ogata, Sr.'s Motion to Vacate, Set Aside or Correct Sentence, pursuant to Title 28 U.S.C. § 2255, (ECF No. 125), is **DENIED.**

Petitioner is not entitled to an evidentiary hearing.

Petitioner is not entitled to a certificate of appealability. This case is now **CLOSED.**

IT IS SO ORDERED.

DATED: December 10, 2015, Honolulu, Hawaii.



  /s/ Helen Gillmor
Helen Gillmor
United States District Judge

Francis S.K. Ogata, Sr. v. United States of America; Cr. No. 12-00190-HG; Cv. No. 15-00220-HG-BMK; **ORDER DENYING PETITIONER FRANCIS S.K. OGATA, SR.'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE, PURSUANT TO 28 U.S.C. § 2255 (ECF No. 125)**